UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

LLOYD V. WARREN III, as an individual          :          Case No. 10 Civ. 4718 (DAB) (AJP)
and as a representative of the class,

                                           :

                  Plaintiff,

                                           :

          -against-

                                           :

CHASE HOME FINANCE, LLC and
JPMORGAN CHASE BANK, N.A.,          :

                      Defendants.          :

------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CHASE HOME FINANCE LLC AND JPMORGAN CHASE BANK, N.A.'S MOTION TO <u>DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Andrea Likwornik Weiss
LEVI LUBARSKY & FEIGENBAUM LLP
1185 Avenue of the Americas, 17th Floor
New York, New York 10036
Tel: (212) 308-6100
Fax: (212) 308-8830
aweiss@llf-law.com

LeAnn Pedersen Pope (admitted *Pro Hac Vice*)
Stephen R. Meinertzhagen (admitted *Pro Hac Vice*)
Andrew D. LeMar (admitted *Pro Hac Vice*)
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
Phone:   (312) 840-7000
Fax:      (312) 840-7900
lpope@burkelaw.com
smeinertzhagen@burkelaw.com
alemar@burkelaw.com

ATTORNEYS FOR CHASE HOME FINANCE LLC and JPMORGAN CHASE BANK, N.A.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 3

STANDARD ........................................................................................................... 7

ARGUMENT .......................................................................................................... 8

I.      Federal Law Authorized CHF to Require Plaintiff to Maintain Flood Insurance
        in an Amount Greater Than His Outstanding Loan Balance ................................ 8

        A.      Federal Law Requires Flood Insurance on Plaintiff's Property ............................. 9

        B.      Federal Law Authorizes CHF to Require Plaintiff to Maintain Flood
                Insurance in an Amount Greater Than His Outstanding Balance. ....................... 10

                1.      CHF was authorized to require Plaintiff to maintain flood
                        insurance in an amount greater than his outstanding balance. ................. 11

                2.      For HELOCs, the outstanding principal balance is not even the
                        proper measure for determining the minimum flood insurance
                        coverage amount ............................................................................... 14

        C.      Plaintiff's Mortgage Required Plaintiff to Maintain Flood Insurance. ................. 16

II.     Plaintiff's State Law Claims are Preempted Under the NFIA. .......................... 18

III.    Plaintiff's N.Y. GBL § 349 Claim Fails. ..................................................... 19

IV.     Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing
        Fails. ........................................................................................................ 21

CONCLUSION ..................................................................................................... 22

## PRELIMINARY STATEMENT

Plaintiff's claim that a lender may not require flood insurance in an amount greater than the principal balance of the loan is entirely unsupported by federal flood insurance law.[1] Specifically, Plaintiff alleges the existing balance on his home equity line of credit ("HELOC") is about $68,500 and, as a result, federal law prohibited Chase Home Finance LLC ("CHF") from requiring him to maintain more than $68,500 in flood insurance coverage. Plaintiff is incorrect. In fact, CHF requires Plaintiff to maintain flood insurance in the amount of $250,000 – the maximum amount authorized under federal law for a single-family home – which is expressly permitted by federal law.

First, Plaintiff's presumption that federal flood insurance law sets a maximum ceiling for flood insurance based on outstanding loan balance is wrong. The National Flood Insurance Act of 1968, 42 U.S.C. § 4001 *et seq.* ("NFIA"), and its implementing regulations set *minimum* coverage compliance amounts. *Id.* § 4012a(b)(1); 12 C.F.R. § 22.3(a); Federal Emergency Management Agency ("FEMA"), Mandatory Purchase of Flood Insurance Guidelines at 33 (Sept. 2007) ("FEMA Guidelines").[2] In 2009, the Office of Comptroller of Currency ("OCC") – which regulates national banks (such as JPMCB) and their subsidiaries (such as CHF) – and several other federal agencies governing lending institutions issued interagency guidance regarding flood insurance requirements. "Loans in Areas Having Special Flood Hazards; Interagency Questions and Answers Regarding Flood Insurance; Notice," 74 Fed. Reg. 35,914 ("Interagency Q & A") (July 21, 2009) (relevant portions attached as Ex. 2). The Interagency Q & A makes clear that the NFIA and its implementing regulations set a *minimum* insurance

---

[1] Plaintiff's First Amended Complaint ("FAC") is attached as Exhibit 1.

[2] *Available at* http://www.fema.gov/library/viewRecord.do?id=2954 (accessed September 1, 2010), with relevant portions attached hereto as Ex. 8.

requirement, and that lenders are permitted to require more coverage than the minimum

coverage.  Specifically, the agencies answered the following question, in pertinent part:

> *16. Can a lender require more flood insurance than the minimum required by the Regulation?*
>
> *Answer:*  Yes.  Lenders are permitted to require more flood insurance coverage than required by the Regulation.

*Id*. at 35,936 (italics in original).  *See also id*. at 35,918 ("[A] lender can require more flood

insurance than the minimum required by the Regulation.  The Regulation requires a minimum

amount of flood insurance; however, lenders may require more coverage, if appropriate.").

Second, Plaintiff does not even accurately represent the minimum federal flood insurance

requirements for the type of loan at issue here – HELOCs.  According to Plaintiff, the amount of

flood insurance is limited to the outstanding principal balance of his loan.  To the contrary, the

OCC guidelines for the minimum required flood insurance on HELOCs state:

> For home equity lines of credit (HELC), it may be difficult to calculate the amount of insurance for the line since the borrower will be drawing down differing amounts on the line at different times. A bank may *. . . . [u]pon origination, require the purchase of flood insurance based on the total amount of the line*, *the value of the improved property or the maximum amount of flood insurance coverage available*, whichever is less.

Comptroller of Currency, "Flood Disaster Protection" at 6 (May 1999) ("OCC Guidelines")

(emphasis added).[3]  The 2009 Interagency Q & A clarified that a HELOC or second-position

mortgage lender or servicer cannot determine the amount of insurance coverage based on a

HELOC balance alone.  74 Fed. Reg. at 35,940, Q & A 36 ("a lender cannot comply with the Act

and Regulation by requiring the purchase of an NFIP filed insurance policy only in the amount of

---

[3]  *Available at* http://www.occ.treas.gov/handbook/flood.pdf (accessed September 1, 2010), with relevant portions attached hereto as Ex. 9.  Likewise, FEMA has explained, "where there is no policy on the collateral, the borrower must, at a minimum, obtain a policy as a requirement for drawing on [a HELOC]. . . . [A] lender may . . . [u]pon origination, require the purchase of flood insurance for the total amount of all loans or the maximum amount of flood insurance coverage available, whichever is less."  FEMA Guidelines at 33.

the outstanding principal balance of the second mortgage without regard to the amount of flood insurance coverage on a first mortgage").

Because Plaintiff's FAC is based on the false premise that federal flood insurance laws do not authorize CHF to require flood insurance in an amount greater than Plaintiff's outstanding HELOC balance, all his claims fail and the Court should dismiss his FAC in its entirety with prejudice under Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

**Procedural History.**  Plaintiff filed his original complaint on June 16, 2010 (Dkt. No. 1), and on August 2, 2010, Defendants moved to dismiss the original complaint.  (Dkt. Nos. 11-12.) On August 13, 2010, Plaintiff filed his FAC (Dkt. No. 16), which is nearly identical to his original complaint, except Plaintiff no longer brings a claim under the Truth in Lending Act.

**Plaintiff's Allegations.** Plaintiff alleges he obtained a HELOC with a credit limit of $92,000 from JPMCB on October 29, 2007.  (FAC para. 9.)  He further alleges that "Defendants hold the only secured interest on Plaintiff's residence."  (*Id*.)  Upon opening the line, Plaintiff drew $69,245.54, but has made no additional draws.  (*Id*.)  When he opened his HELOC, Plaintiff entered into an "Agreement to Provide Insurance," which Plaintiff alleges directed him to mail documents or materials relating to insurance to CHF, and he "obtained flood insurance coverage of $92,000 from a non-Chase affiliated company."  (*Id*. paras. 10-11.)  Plaintiff alleges he "did so at the direction of Defendants, who misrepresented to him in a 'Flood Insurance Notice' that 'federal law' required, 'at a minimum,' that he obtain this amount of coverage."  (*Id*.)

In 2008, CHF sent Plaintiff a letter suspending future draws against his account due to a decline in his property value.  (*Id*. para. 12.)  In October 2009, he requested a decrease in his flood insurance coverage "from $92,000 to $68,500—the approximate amount of his principal

3

balance at the time," and on November 2, 2009, CHF agreed in a letter to the decrease.  (*Id.* paras. 13-14.)

On April 12, 2010, CHF sent Plaintiff a letter informing him that he needed to increase his flood insurance coverage to $250,000.  (*Id.* para. 15.)  Plaintiff alleges this letter informed him that "[f]ederal law requires" him to purchase and maintain flood insurance and further states:

> At a minimum, the coverage needed on your flood insurance policy must be equal to the lesser of the following:
>
> - The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000; or
>
> - 100% of the full replacement cost value of the dwelling and insurable improvements.

(*Id.* para. 16.)  Plaintiff claims federal law "does not require flood insurance beyond the principal balance of an existing loan or line of credit."  (*Id.* para. 17 (citing 42 U.S.C. § 4012a(b)(1).)  Plaintiff further alleges that this letter is "fraudulent, deceptive, and misleading, in that it misstates federal flood insurance requirements and fails to mention that those requirements are satisfied if the property is insured in an amount at least equal to the principal balance."  (*Id.*)

On May 4, 2010, CHF sent Plaintiff a second letter stating that "the terms of his mortgage" required him "to maintain continuous flood insurance on [his] property" and that he "must increase [his] flood coverage by $158,000."  (*Id.* para. 18.)  Plaintiff alleges this statement is "fraudulent, deceptive, and misleading" because JPMCB's "mortgage interest in Plaintiff's property extends only insofar as its financial stake in the property, and the terms of Defendants' loan and mortgage documents do not mandate additional coverage."  (*Id.* para. 19.)  Plaintiff alleges that, at the time, his line of credit "was approximately $68,500.00, and Plaintiff was already maintaining flood insurance that covered more than that amount."  (*Id.* para. 20.)  In addition, the May 4, 2010 letter indicated that CHF had "asked an insurance company to issue a binder placing additional flood insurance coverage" in the amount of $158,000, and CHF would

purchase a policy in that amount if Plaintiff did not do so within 45 days.  (*Id*. para. 21.)  "CHF

then billed Plaintiff for the cost of the binder."  (*Id*. para. 22.)  Plaintiff chose to increase "his

independently obtained flood insurance coverage by an additional $158,000," which "went into

effect on June 13, 2010."  (*Id*. para. 23.)

**Plaintiff's Loan Documents.**  On October 29, 2007, Plaintiff entered into a HELOC

Agreement with JPMCB, with a $92,000 credit limit, secured by Plaintiff's property in Norwich,

New York.[4]  (HELOC Agreement at 1.)  The Mortgage states, in pertinent part:

> **OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.** . . . If
> the Property is or becomes located in an area designated by the Director of the
> Federal Emergency Management Agency as a special flood hazard area, I agree
> to obtain and maintain Federal Flood Insurance for the full unpaid principal
> balance of the loan and any prior liens on the property securing the loan, up to
> the maximum policy limits set under the National Flood Insurance Program, or as
> otherwise required by Lender.  I agree to maintain such insurance for the term of
> the loan.

Mortgage at 3.

Three other documents attached to Plaintiff's HELOC Agreement and signed by Plaintiff

contain flood insurance requirements.  A document entitled "Notice of Insurance Requirements,"

---

[4] Copies of the Mortgage and HELOC Agreement are attached as Exhibits 3 and 4, respectively.  In ruling on a motion pursuant to Rule 12(b)(6), a court may consider "'any documents . . . incorporated into the complaint by reference . . . .'" *Baidu, Inc. v. Register.com, Inc.*, No. 10 Civ. 444(DC), 2010 WL 2900313, at *3 (S.D.N.Y. July 22, 2010) (quoting *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)).  "[E]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Holmes v. Poskanzer*, 342 Fed. Appx. 651, 652 (2d Cir. 2009) (citation and quotation marks omitted).  *See also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, [a court may consider] . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").  Defendants also attach Plaintiff's "Notice of Insurance Requirements" (Ex. 5), "Flood Insurance Notice" (Ex. 6), and "Agreement to Provide Insurance" (Ex. 7), all of which were attached to Plaintiff's HELOC Agreement and signed by Plaintiff, the April 12, 2010 letter sent by Plaintiff to CHF (Ex. 10), a January 7, 2010 letter from CHF to Plaintiff requesting a copy of Plaintiff's homeowner's insurance information (Ex. 11), and a copy of Plaintiff's homeowner's insurance policy he sent to CHF in February 2010 (Ex. 12).  Each of these documents is integral to the FAC.

contained the same language as the Mortgage.  (Ex. 5.)  A document entitled "Flood Insurance Notice" explained that because Plaintiff's property is located in a flood zone, he is required to purchase flood insurance and if Plaintiff "fail[s] to purchase or renew flood insurance on the property, Federal law authorizes and requires Lender to purchase the flood insurance at [his] expense."  (Ex. 6.) The notice then explains that "[a]t a minimum," Plaintiff's flood insurance amount must be "(1) the maximum amount of your credit line (whether or not outstanding) and the outstanding principal of the loan and any prior liens on the property securing the loan; or (2) the maximum amount of coverage allowed for the type of property under the NFIP."  (*Id.*) Finally, a document entitled "Agreement to Provide Insurance" states that Plaintiff agrees to "obtain and maintain Federal Flood Insurance . . . for the maximum amount of [his] credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan." (Ex. 7.)

Under Plaintiff's HELOC Agreement, his HELOC remains open unless and until either he or the lender terminates the account.  (*See* HELOC Agreement at 4-5.)  The Mortgage remains as a lien on the property until Plaintiff requests the Mortgage be surrendered and all sums secured by the Mortgage are paid.  (*See* Mortgage at 7.)

**Plaintiff's Claims.**  Count I asserts "Defendants" violated N.Y. Gen. Bus. Law § 349 by: (1) requiring Plaintiff to "purchase and/or maintain flood insurance in amounts greater than necessary to secure the sums borrowed and unpaid" under his HELOC; (2) "[p]urporting to incorporate and/or enforce unconscionable and/or deceptive provisions relating to flood insurance in the relevant form contracts and disclosures;" (3) "[f]raudulently and deceptively misstating federal flood insurance requirements;" (4) representing that Plaintiff's HELOC

6

transaction "conferred obligations on Plaintiff . . . that they did not;" (5) "'[b]aiting and switching' Plaintiff . . . with respect to the terms of credit by arbitrarily increasing the amount of flood insurance required after origination;" and (6) engaging in "other unconscionable and deceptive acts and practices." (FAC para. 40.)   Count II asserts "Defendants" breached the covenant of good faith and fair dealing by "misrepresenting both federal . . . and contractual requirements regarding flood insurance, requiring insurance coverage in excess of that required by federal law and by relevant loan and mortgage documents, by unreasonably exercising in bad faith Defendants' purported discretionary authority afforded under the loan and mortgage documents, and by 'baiting and switching' Plaintiff . . . ." (*Id.* para. 47.)

## **STANDARD**

Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In *Iqbal*, the Supreme Court outlined the analytical framework for evaluating the sufficiency of a claim under the standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), holding that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, internal citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 553-55 (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has

acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

*Iqbal*, 129 S. Ct. at 1949 (internal citations omitted).

## ARGUMENT

The FAC should be dismissed because:  (1) federal law authorized CHF to require Plaintiff to maintain flood insurance in an amount greater than his outstanding balance and, as a result, the basis for Plaintiff's entire FAC fails on its face; (2) his claims are preempted by the NFIA; (3) his claim under N.Y. GBL § 349 is barred because the conduct that allegedly violates § 349 complies with federal law; and (4) his claim for breach of the implied covenant fails because neither Defendant has prevented Plaintiff from realizing the benefits of any contract.[5]

## I.   FEDERAL LAW AUTHORIZED CHF TO REQUIRE PLAINTIFF TO MAINTAIN FLOOD INSURANCE IN AN AMOUNT GREATER THAN HIS OUTSTANDING LOAN BALANCE.

Federal flood insurance guidelines mandate that Plaintiff maintain flood insurance on his property, regardless of the available credit on his HELOC, in an amount *at least* equal to the replacement cost value ("RCV") of his dwelling, the line of credit at origination (plus the amount of any other prior liens), or the federal maximum amount of $250,000. Therefore, CHF acted properly and complied with federal law when it required Plaintiff to maintain flood insurance in an amount greater than his HELOC's outstanding balance.  Because both counts in Plaintiff's

---

[5] The Court should dismiss Plaintiff's FAC in its entirety against JPMorgan Chase Bank, N.A. because there are no factual allegations of any wrongdoing relating to that defendant.  The only allegation relating to JPMCB is that Plaintiff obtained the line of credit from JPMCB in October 2007 (FAC para. 9), but there are no facts alleged from which the Court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  In fact, the FAC merely alleges that "[u]pon information and belief, CHF's conduct was authorized and/or ratified by JPM at all relevant times, and JPM was responsible for its conduct." (FAC para. 10.)  This is precisely the type of "naked assertion[s] devoid of further factual enhancement" that no longer suffices under *Twombly* and *Iqbal*.

FAC are based on the false premise that Plaintiff could not be required to maintain flood insurance in an amount greater than his outstanding balance, the Court should dismiss Plaintiff's FAC in its entirety, with prejudice.

### A.   Federal Law Requires Flood Insurance on Plaintiff's Property.

The NFIA requires borrowers and lenders to purchase and maintain flood insurance on properties within flood zones.  In passing the NFIA and its amendments, Congress found that:

> (4) Federal instrumentalities insure or otherwise provide financial protection to banking and credit institutions whose assets include a substantial number of mortgage loans and other indebtedness secured by property exposed to loss and damage from floods and mudslides; [and]

> (5) the Nation cannot afford the tragic losses of life caused annually by flood occurrences, nor the increasing losses of property suffered by flood victims, most of whom are still inadequately compensated despite the provision of costly disaster relief benefits.

42 U.S.C. 4002(a)(4)-(5).  *See also Custer v. Homeside Lending, Inc.*, 858 So. 2d 233, 244 (Ala. 2003) ("[T]he 'primary purpose' of the flood-program legislation is to reduce the massive burden on the national treasury resulting from escalating federal expenditures for flood-disaster relief assistance . . . .") (citation omitted).

The 1994 Reform Act amended the NFIA and imposed significant new obligations on federally regulated banks by strengthening the mandatory purchase provisions under the NFIA. *See* 42 U.S.C. § 4012a(b)(1).  FEMA is one of the federal agencies authorized to administer and implement the NFIA. 42 U.S.C. § 4011(a).  FEMA issues guidelines regarding flood insurance, the most recent of which came out in September 2007.  *See generally* FEMA Guidelines.  In addition, the OCC promulgates regulations implementing the NFIA's requirements.  *See* 12 C.F.R. Part 22.  Also, as discussed earlier, the federal agencies regulating mortgage lenders –

including the OCC[6] – issued the Interagency Q & A regarding flood insurance in July 2009 that became effective in September 2009.  74 Fed. Reg. 35,914.

The NFIA prohibits federally regulated banks, like JPMCB, from making mortgage loans on properties in flood zones unless the properties securing the loans have adequate flood insurance.  42 U.S.C. § 4012a(b)(1); 12 C.F.R. § 22.3(a).  NFIA requirements apply to HELOCs. *See* 74 Fed. Reg. at 35,940; FEMA Guidelines at 32.  If a borrower in a flood zone fails to maintain adequate flood insurance on his or her property, then the bank or its servicer "shall" purchase flood insurance and may charge the borrower for the cost of the insurance premiums and any fees incurred.  42 U.S.C. §§ 4012a(e)(1)-(2); 12 C.F.R. § 22.7.  The NFIA and its related regulations require flood insurance coverage to be purchased in an amount "at least equal" to one of three amounts:  (1) the maximum amount of NFIP flood insurance coverage available, which is $250,000 for residential dwellings; (2) the outstanding principal balance of the loan(s); or (3) the RCV of the building.  FEMA Guidelines at 32.

> ### B.  Federal Law Authorizes CHF to Require Plaintiff to Maintain Flood Insurance in an Amount Greater Than His Outstanding Balance.

Plaintiff's theory that federal law does not require flood insurance in an amount greater than the outstanding principal balance of his home loan (FAC para. 17, 19, 40, 47) is simply wrong.  The NFIA, interagency guidance, FEMA Guidelines, and OCC Guidelines all make clear that the NFIA's flood insurance coverage requirements are floors – not ceilings – and the best practice is to require insurance up to the building's RCV (or the NFIP maximum, if the RCV is over $250,000), which is what CHF did here.  Furthermore, Plaintiff's theory ignores OCC and

---

[6] In addition to FEMA and the OCC, other federal agencies that promulgate guidance are the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, the Farm Credit Administration, and the National Credit Union Administration.

FEMA guidance specifically governing HELOCs, which requires the purchase of flood insurance in an amount greater than outstanding HELOC balances.

> **1.     CHF was authorized to require Plaintiff to maintain flood insurance in an amount greater than his outstanding balance.**

Plaintiff's entire case hinges on the incorrect presumption that federal law provides a ceiling for flood insurance, and that the ceiling is the outstanding balance of the loan.  (FAC paras. 17, 19, 40, 47.)  To the contrary, the three coverage options are baselines for coverage amounts – not ceilings.  42 U.S.C. § 4012a(b)(1) (flood insurance must be in an amount "at least equal to" the outstanding principal balance or NFIP maximum); FEMA Guidelines at 32 ("[T]o meet *minimum* compliance requirements, lenders must see to it that flood insurance coverage on a building is *at least* the lowest of the [three coverage options].") (emphasis added); 74 Fed. Reg. at 35,940 (for HELOCs, "a lender *cannot comply with the Act and Regulation* by requiring the purchase of an NFIP flood insurance only in the amount of the outstanding principal balance of the second mortgage . . . .") (emphasis added).[7]

The 2009 Interagency Q & A and FEMA Guidelines both explicitly provide that the NFIA and its regulations provide *minimum* compliance requirements.  FEMA Guidelines at 41 ("If the lender opts to protect only its security in the loan (loan balance), the insurance proceeds may be inadequate."); 74 Fed. Reg. at 35,936 ("Lenders are permitted to require more flood insurance coverage than required by the Regulation."); *id*. at 35,918 ("[A] lender can require more flood insurance than the minimum required by the Regulation.  The Regulation requires a minimum amount of flood insurance; however, lenders may require more coverage, if appropriate.").

---

[7] Technically, the NFIA and regulatory guidance do cap the amount that can be required at either the RCV or the maximum of $250,000, whichever is less.  *See* 74 Fed. Reg. at 35,935 (stating that, in addition to the $250,000 cap for single-family dwellings, flood insurance coverage under the NFIA is limited to, and should not exceed, the RCV).

The FEMA Guidelines emphasize that the best practice is to require flood insurance coverage up to the RCV:

> A sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full RCV.  Such a risk management strategy meets or exceeds the minimal compliance requirements and is the easiest approach for lenders to implement.  Security interests in [Special Flood Hazard Areas] should be protected with flood insurance to the full insurable value, to the extent possible under the NFIP.

FEMA Guidelines at 27.  The FEMA Guidelines further caution that,

> If the lender opts to protect only its security in the loan, the amount of the policy may be insufficient to cover the cost of repairing the building.

> By insuring buildings to the full RCV, the lender and borrower are both better protected.

*Id.* at 27-28.

At least two courts have rejected the argument that a lender could only require a borrower to purchase flood insurance in an amount equal to the borrower's loan balance.  In *Hayes v. Wells Fargo Home Mortg.*, No. 06-1791, 2006 WL 3193743 (E.D. La. Oct. 31, 2006), the borrower was required at origination of his mortgage loan to purchase flood insurance in the amount of his loan.  *Id.* at *1.  Subsequently, his loan was assigned to Wells Fargo, which "required all loans covering property in a flood zone to be insured to the full amount of the appraised property value, rather than the amount of indebtedness."  *Id.*  The borrower argued that "under Louisiana law, Wells Fargo could only require him to purchase flood coverage in an amount equal to the loan balance."  *Id.* at *4.  The court rejected this argument, holding:

> The amount of flood insurance the homeowner mortgagor is required to carry must be "*at least* equal to the lesser of the outstanding principal balance of the designated loan or the maximum limit of coverage available for the particular type of property, whichever is less."  42 U.S.C. § 4012a(b) (emphasis added). *The "at least" language indicates that this requirement is a minimum with which the lender must comply and does not prohibit a contractual agreement whereby the lender may require coverage in an amount greater than the balance of the loan secured by the property vulnerable to flooding.  Furthermore, "the qualified*

12

> *phrasing is reiterated by the requirement in § 4012a(e) that the borrower be notified of his obligation to obtain flood insurance that is 'not less' than the amount required by subsection (b)(1)."* Custer v. Homeside Lending, Inc., 858 So. 2d 233, 245 (Ala. 2003).

*Id.* (footnote omitted) (second emphasis added).

Similarly, the court in *Custer* held that the lender's force-placement of flood insurance in an amount greater than the outstanding balance of the loan was consistent with the NFIA. 828 So. 2d 233. In *Custer*, the borrowers' outstanding principal balance was approximately $2,000, and the lender force-placed flood insurance in the amount of $79,000, which was the RCV. *Id.* at 239. After closely analyzing section 4012a(b) of the NFIA, the court determined that the Act sets a "floor" not a "ceiling" by requiring flood insurance "in an amount at least equal to" the loan balance. *Id.* at 244. The court concluded that "the NFIA establishes that the *minimum*, not the maximum, amount of flood insurance coverage that may be forced-placed on a mortgagor by a mortgagee is that amount equal to the outstanding principal on the mortgagor's loan." *Id.* at 246 (emphasis in original). The court also found:

> given that the "primary purpose" of the flood-program legislation is to reduce the massive burden on the national treasury resulting from escalating federal expenditures for flood-disaster relief assistance, it can be logically argued that Congress would not be adverse to the *contractual* procurement of force-placed insurance covering the full value of the property. After all, the obligation borne by the federal treasury for flood-disaster relief assistance to homeowners of properties damaged or destroyed by flooding may well extend beyond the balance of any mortgage loan encumbering them.

*Id.* at 244 (citation omitted).[8]

---

[8] Only one court has held otherwise. In *Norris v. Union Planters Bank*, 739 So. 2d 869, 874 (La. App. 1999), a Louisiana state appellate court held that a bank could not require the plaintiff homeowners to obtain flood insurance beyond the amount of the outstanding loan balance. However, the only two cases analyzing *Norris* have declined to follow its holding. *Hayes*, 2006 WL 3193743, at *5; *Custer*, 858 So.2d at 243-246. As the Court in *Hayes* noted, "[b]ecause *Norris* was a state court case interpreting a federal statute, it is not binding on this Court, and this Court declines to follow its holding." *Hayes*, 2006 WL 3193743, at *5 (internal citations omitted). The *Custer* court found that *Norris* misinterpreted a decision upon which it relied for its holding and ignored the "at least" language in § 4012a(b)(1), and the plain and

Just as the lenders in *Hayes* and *Custer* were authorized to require their borrowers to maintain flood insurance in an amount greater than their outstanding balance, CHF was authorized under federal law to require Plaintiff to maintain flood insurance in an amount greater than his outstanding balance.  In fact, *Hayes* and *Custer* were both *before* the FEMA Guidelines and 2009 Interagency Q & A, both of which reinforce the holdings in *Hayes* and *Custer* that a lender may require a borrower to maintain flood insurance in an amount greater than the minimum NFIA amounts.  FEMA Guidelines at 27-28, 32, 41; 74 Fed. Reg. at 35,918, 35,936. Plaintiff's argument that federal law did not allow CHF to require him to maintain flood insurance in an amount greater than his outstanding balance is simply without support.

2.  **For HELOCs, the outstanding principal balance is not even the proper measure for determining the minimum flood insurance coverage amount.**

Additionally, Plaintiff cites authority that does not specifically govern HELOCs.  In paragraph 17 of his FAC, Plaintiff cites 42 U.S.C. § 4012a(b)(1), which requires flood coverage "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act . . . ."  However, § 4012a(b)(1) *does not* address the requirements for HELOCs; the OCC and FEMA Guidelines do.  Under the OCC Guidelines, the outstanding principal balance *is not* a proper measure for determining the minimum flood insurance coverage for HELOCs:

> For home equity lines of credit (HELC), it may be difficult to calculate the amount of insurance for the line since the borrower will be drawing down differing amounts on the line at different times. A bank may . . . . *[u]pon origination, require the purchase of flood insurance based on the total amount of the line*, the value of the improved property or the maximum amount of flood insurance coverage available, whichever is less.

---

ordinary meaning of §§ 4012a(b)(1) and 4012a(e) established a *minimum* amount of flood insurance that could be force placed.  858 So. 2d at 243-46.

OCC Guidelines at 6 (emphasis added).   The FEMA Guidelines contain similar language regarding HELOCs.  *See* FEMA Guidelines at 33.

When Plaintiff's HELOC originated in October 2007, he was required to maintain $92,000 in flood insurance coverage, which was equal to the full amount of his credit line.  (FAC para. 11.)  At that time, OCC guidelines provided that a lender may require flood insurance based on the total amount of the line of credit (OCC Guidelines, at 6), so requiring Plaintiff to maintain $92,000 in flood insurance complied with federal law.  The fact that Plaintiff has drawn on his line only up to $69,245.00 is irrelevant because "[d]rawing against an approved line of credit does not require further determinations to be made."  FEMA Guidelines at 33.  *See also* 74 Fed. Reg. at 35,940 ("[D]raws against an approved line do not require further determinations.").

In 2009, the Interagency Questions and Answers Regarding Flood Insurance clarified that a HELOC or second-position mortgage lender or servicer cannot determine the amount of coverage based on the junior lien alone.  74 Fed. Reg. 35,940.  As a result, CHF asked Plaintiff to provide information regarding the replacement cost of his home in order to determine flood insurance requirements based on the lesser of the RCV or the NFIP maximum ($250,000).  In February 2010, Plaintiff provided CHF with documentation showing that the RCV of Plaintiff's dwelling was $345,018.  (Ex. 12.)  CHF thereafter required Plaintiff to maintain $250,000 of flood insurance coverage (the lesser of replacement cost value or the NFIP maximum of $250,000).  While $250,000 in coverage is more than the amount of all loans secured by Plaintiff's property,[9] federal law expressly permits CHF to require Plaintiff to maintain more flood insurance coverage than the minimum amount.  FEMA Guidelines at 41 ("If the lender opts to protect only its security in the loan (loan balance), the insurance proceeds may be

---

[9]  The FAC alleges that "Defendants hold the only secured interest on Plaintiff's residence."  (FAC para. 9.)

inadequate."); 74 Fed. Reg. at 35,936 ("Lenders are permitted to require more flood insurance coverage than required by the Regulation."); *id.* at 35,918 ("[A] lender can require more flood insurance than the minimum required by the Regulation.  The Regulation requires a minimum amount of flood insurance; however, lenders may require more coverage, if appropriate."). CHF's conduct in requiring Plaintiff to maintain $250,000 in flood coverage on his property valued at over $340,000 was expressly allowed by federal law.

###    C.    Plaintiff's Mortgage Required Plaintiff to Maintain Flood Insurance.

Plaintiff appears to allege that CHF breached the loan documents and otherwise acted improperly by requiring flood insurance coverage in an amount greater than his outstanding balance or representing that flood insurance was required by the loan documents.  (*See* FAC paras. 18-19, 40, 47.)  Again, Plaintiff is wrong.  His Mortgage requires the maintenance of flood insurance in an amount greater than his outstanding HELOC balance. (Mortgage, at 3 (requiring flood insurance in an amount at least equal to Plaintiff's "*full* unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender.") (emphasis added).) Further, the Notice of Insurance Requirements, Flood Insurance Notice, and Agreement to Provide Insurance, all of which were signed by Plaintiff and attached to his HELOC Agreement, contain the same requirements.  In addition, the Flood Insurance Notice explains that the first coverage option is calculated by using "the maximum amount of your credit line (*whether or not outstanding*) and the outstanding principal of the loan and any prior liens on the property securing the loan."  (Ex. 6 (emphasis added).)  *See also* Agreement to Provide Insurance ("[Plaintiff] agree[s] to . . . maintain Federal Flood Insurance . . . for the maximum amount of [his] credit line and the full unpaid principal balance of any prior liens on the property securing

the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.").

Both *Hayes* and *Custer* considered similar language and held that such language expressly permits the lender to require, and force place, flood insurance in an amount greater than the outstanding principal balance of the loan.   In *Hayes*, the Court found that the plaintiff's mortgage provisions provided the lender with a contractual right to force place a flood insurance policy with coverage in an amount equal to the full fair market value of the property, as opposed to the outstanding balance under the loan.   2006 WL 3193743, at *3.   In so holding, the Court ruled that "[n]othing in this language is ambiguous, unclear or could be subject to different interpretation." *Id*.

The Alabama Supreme Court reached a similar result in *Custer*, where the mortgage at issue required the borrower to maintain hazard and flood insurance "in such amounts and for such periods as may be required by the Mortgagee . . . ."   858 So. 2d at 237.   The borrowers' outstanding balance was $2,000, and the lender force-placed flood insurance in the amount of $79,000 (the RCV).   *Id*. at 239.   "Contractually, [the lender] was given the right to force-place a higher amount, under the provisions of the mortgage authorizing it to force-place insurance against loss 'in such amounts' as it might choose to require."   *Id*. at 246.   The court held the lender "did not break the terms of the mortgage agreement between it and the Custers by force-placing flood insurance in an amount that exceeded the outstanding principal on the Custers' loan."   *Id*. at 247.

Here, as in *Hayes* and *Custer*, Plaintiff's loan documents required Plaintiff to maintain flood insurance coverage greater than the unpaid balance of his HELOC.

## II.   PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED UNDER THE NFIA.

Plaintiff is attempting to use state law – specifically N.Y. GBL § 349 (Count I) and the breach of the implied covenant of good faith and fair dealing (Count II) – as a means to regulate the business practices of CHF as they pertain to the force placement of flood insurance. However, the NFIA contains an express preemption[10] provision relating to force placement of flood insurance coverage. 42 U.S.C. § 4012a(f)(6) ("Notwithstanding any State or local law, for purposes of this subsection, any regulated lending institution that purchases flood insurance or renews a contract for flood insurance on behalf of or as an agent of a borrower of a loan for which flood insurance is required shall be considered to have complied with the regulations issued under subsection (b) of this section."); *see also* FEMA Guidelines at 41 ("The 1994 Reform Act contains preemption language stating that the NFIP force placement provisions prevail over state and local law.").  Plaintiff does not – and cannot – allege that his loan did not require flood insurance.  As discussed above, the NFIA and related regulations authorized CHF to require Plaintiff to maintain flood insurance in an amount greater than his outstanding HELOC balance, and Plaintiff's suggestion otherwise is contrary to federal rules and regulations. Therefore, Plaintiff's state law claims are preempted.

In *Hayes*, the court rejected the plaintiffs' attempt to assert a claim under the Louisiana Unfair Trade Practices Act ("LUPTA").  2006 WL 3193743, at *6.  Not only did the Court hold that the lender could not have violated the statute where it "merely enforced its contractual rights under the Mortgage, and its actions were not 'unethical, oppressive, unscrupulous, or substantially injurious,'" but it also found "merit" in the lender's argument that such a claim was preempted.  *Id*.  The court specifically held that,

---

[10] Preemption may occur in three contexts:  (1) field preemption, (2) conflict preemption, or (3) express preemption.  *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516-17 (1992).

As Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A., which is regulated by the Office of the Comptroller of Currency ("OCC"), and the OCC directly regulates lender flood insurance requirements and implements NFIA and FDPA provisions, 12 C.F.R. § 22, FN7 LUPTA is not applicable in this case.

FN7.  12 C.F.R. § 22.3 forbids lenders from issuing mortgage loans secured by property within flood zones unless the property is insured for flood "at least equal to the lesser of the outstanding principal balance of the designated loan or the maximum limit of coverage available for the particular type of property." 12 C.F.R. § 22.7 also requires the lender to notify the borrower to obtain flood insurance, to purchase such insurance on the borrower's behalf if he or she fails to do so, and to charge the borrower for the cost of premiums and other fees related to procurement of insurance.

*Id*. (footnote in original.)  *See also Wright v. Allstate Ins. Co.*, 500 F.3d 390, 398 (5th Cir. 2007)

("[T]he NFIA preempts state law claims that arise under federal flood insurance policies.").

Because both of Plaintiff's claims are preempted by federal law, the FAC is subject to dismissal with prejudice.

## III.   PLAINTIFF'S N.Y. GBL § 349 CLAIM FAILS.

Count I of Plaintiff's FAC purports to bring a claim under N.Y. GBL § 349.  However, this claim is barred by N.Y. GBL § 349(d), which states:

In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

N.Y. GBL § 349(d).  Because CHF and JPMCB complied with federal flood insurance statutes, rules, and regulations, Plaintiff's § 349 claim is barred.

Even if Plaintiff's § 349 claim was not barred because CHF and JPMCB complied with federal law, the claim would nonetheless fail because there is no misleading act.  An element of a § 349 claim is an act or practice that is "misleading in a material way." *See Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers' Local 214 Pension Fund*

*v. Marine Midland Bank*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)).  Here, the crux of Plaintiff's § 349 claim is that it was improper for "Defendants:"  (1) to require Plaintiff to purchase flood insurance in an amount greater than his HELOC's outstanding balance; (2) to insert provisions in Plaintiff's loan documents that require Plaintiff to purchase flood insurance in an amount greater than his outstanding balance; (3) to represent to Plaintiff that he was required to maintain flood insurance in an amount greater than his outstanding balance; and (4) to "bait[] and switch[]" Plaintiff by increasing the amount of required flood insurance after origination. (FAC para. 40.)  As discussed above, there is nothing improper about requiring Plaintiff to maintain flood insurance in an amount greater than his outstanding balance and, in fact, it is authorized by federal law.   Additionally, the provisions in Plaintiff's loan documents unambiguously indicated that he would be required to maintain flood insurance in an amount greater than his principal balance.  (Mortgage at 3; Notice of Insurance Requirements; Flood Insurance Notice; Agreement to Provide Insurance.)  There was nothing misleading about CHF's letters or actions.

Plaintiff's FAC adds the allegation that "Defendants" engaged in "bait and switch" tactics "with respect to the terms of credit by arbitrarily increasing the amount of flood insurance required after origination."  (FAC para. 40(E).)  Plaintiff's loan documents contradict any such "bait and switch" allegations.   Plaintiff alleges he was required to maintain flood insurance greater than his outstanding balance, in an amount at least equal to the RCV of his home or the NFIP maximum of $250,000.  (*Id*. para. 16.)  This is exactly what is provided for in his loan documents.  (*See* Mortgage at 3; Notice of Insurance Requirements; Flood Insurance Notice; Agreement to Provide Insurance.)  Therefore, Plaintiff's § 349 claim based on an alleged "bait and switch" must fail.

**IV.    PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING FAILS.**

New York recognizes an independent cause of action for breach of implied covenant of good faith and fair dealing only in certain circumstances, such as when a party "exercises a contractual right as a part of a scheme to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain." *Gross v. Empire Healthchoice Assurance, Inc.*, No. 602848-2005, 2007 WL 2066390, at *3 (N.Y. App. Div. July 18, 2007) (collecting cases). *See also Sauer v. Xerox Corp.*, 95 F. Supp. 2d 125, 132 (W.D.N.Y. 2000) ("[S]uch a claim may be brought, if at all, only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain."). In other words, "where a party's acts subsequent to performance on the contract so directly destroy the value of the contract for another party that the acts may be presumed to be contrary to the intention of the parties, the implied covenant of good faith may be implicated." *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ. 9116(PGG), 2009 WL 321222, at *4 (S.D.N.Y. Feb. 9, 2009) (internal quotations omitted) (citing *M/A-Com Security Corp v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)).

However, the cause of action cannot create new duties that negate explicit contractual rights; it can only enforce existing contractual duties. *Gross*, 2007 WL 2066390, at *3-4; *JPMorgan Chase*, 2009 WL 321222, at *4; *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995) ("The duty of good faith and fair dealing . . . is not without limits, and no obligation can be implied that would be 'inconsistent with other terms of the contractual relationship.'"); *Silvester v. Time Warner, Inc.*, 763 N.Y.S.2d 912, 918 (N.Y. App. Div. 2003) (stating that the implied covenant of good faith and fair dealing "does not impose any obligation upon a party to the contract beyond what the explicit terms of the contract provide"). In *Silvester*, for example,

the court found that because no party had acted to prevent the other's performance of the contract or exercise of rights under the contract, the claim failed.  763 N.Y.S.2d at 918 (noting that where a party does what the contract permitted or where there is no claim that the parties intentionally interfered with the other's rights under the contract, no claim could stand).

Here, CHF was authorized under the loan documents to require Plaintiff to maintain flood insurance in an amount greater than this outstanding HELOC balance.  (Mortgage at 3; Notice of Insurance Requirements; Flood Insurance Notice; Agreement to Provide Insurance.)  Because Plaintiff is attempting to impose an obligation on CHF inconsistent with the loan documents, his breach of the implied covenant of good faith and fair dealing fails.

## CONCLUSION

Plaintiff has already amended his complaint once, and he did not correct any of the deficiencies in his original complaint.  Another bite at the apple would be futile because Plaintiff's underlying theory – that it is improper to require the maintenance of flood insurance in an amount greater than the outstanding balance – is not viable.  *E.g.*, *In re IAC/InterActiveCorp Secs. Litig.*, 695 F. Supp. 2d 109, 125 (S.D.N.Y. 2010) ("[B]ecause the Court views amendment as futile, the claims are dismissed with prejudice.") (citations omitted).  Therefore, the Court should dismiss Plaintiff's First Amended Complaint with prejudice.

DATED:  New York, New York                    Respectfully submitted,
         September 3, 2010

                                                    CHASE HOME FINANCE LLC and
                                                    JPMORGAN CHASE BANK, N.A.

                                                    By its attorneys,

                                                    /s/_____
                                                    Andrea Likwornik Weiss
                                                    LEVI LUBARSKY & FEIGENBAUM LLP
                                                    1185 Avenue of the Americas, 17th Floor
                                                    New York, New York 10036

Tel: (212) 308-6100
Fax: (212) 308-8830
aweiss@llf-law.com

LeAnn Pedersen Pope (admitted *Pro Hac Vice*)
Stephen R. Meinertzhagen (admitted *Pro Hac Vice*)
Andrew D. LeMar (admitted *Pro Hac Vice*)
BURKE, WARREN, MACKAY &
    SERRITELLA, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
Phone:   (312) 840-7000
Fax:       (312) 840-7900
lpope@burkelaw.com
smeinertzhagen@burkelaw.com
alemar@burkelaw.com

11912\00161\740561v11

23