REDACTED

REDACTED

WARREN, LLOYD
DEED OF TRUST / MORTGAGE

WHEN RECORDED MAIL TO:
JPMorgan Chase Bank, N.A.
Retail Loan Servicing
KY2-1606
P.O. Box 11606
Lexington, KY
40576-1606

FOR RECORDER'S USE ONLY

## MORTGAGE

**DEFINITIONS.** The following words are used often in this document. When they are used, they will have the following meanings:

Borrower. LLOYD V WARREN III and all other persons and entities signing the Note will sometimes be called "Borrower".

Credit Agreement. The note or credit agreement signed by Borrower and dated October 29, 2007 will be called the "Note." The Note is in the original amount of $92,000.00. This amount is called "principal." The word "Note" includes all renewals of, extensions of, modifications of and substitutions for the promissory note or credit agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 7.750% per annum. If the index increases, the payments tied to the index, and therefore the total amount secured hereunder, will increase. Any variable interest rate tied to the index shall be calculated as of, and shall begin on, the commencement date indicated for the applicable payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Security Instrument shall be subject to the following maximum rate. NOTICE: Under no circumstances will the interest rate on the Credit Agreement be more than the lesser of 21.000% per annum or the maximum rate allowed by applicable law. Specifically, without limitation, this Security Instrument secures a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. The maturity date of this Security Instrument is October 29, 2037. NOTICE TO OWNER: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

Lender. JPMorgan Chase Bank, N.A. will be called "Lender."

Owner. LLOYD V WARREN III sometimes will be called "Owner" and sometimes simply "I" or "me."

Property. The property that is described in the section titled "DESCRIPTION OF THE PROPERTY" will be called the "Property".

Related Documents. All promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Sums Secured will be called "Related Documents".

Security Instrument. This mortgage document will also be called the "Security Instrument."

Sums Secured. The amounts described below in the section titled "OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY" sometimes will be called the "Sums Secured." The lien of this Security Instrument will not exceed at any one time $92,000.00.

NOTICE: THIS SECURITY INSTRUMENT SECURES AN AGREEMENT WHICH CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

THIS SECURITY INSTRUMENT IS A CREDIT LINE MORTGAGE AS DEFINED IN SECTION 281

| Loan No: REDACTED | MORTGAGE (Continued) | Page 2 |

OF THE NEW YORK REAL PROPERTY LAW. IT SECURES AN INDEBTEDNESS UNDER THE DEFINITION BELOW OF CREDIT AGREEMENT WHICH REFLECTS THE FACT THAT THE PARTIES REASONABLY CONTEMPLATE ENTERING INTO A SERIES OF ADVANCES OR ADVANCES, PAYMENTS, AND READVANCES. THE CREDIT AGREEMENT LIMITS THE AGGREGATE AMOUNT AT ANY TIME OUTSTANDING TO THE MAXIMUM AMOUNT SET FORTH BELOW IN THE DEFINITION OF CREDIT AGREEMENT.

THIS MORTGAGE IS DATED October 29, 2007, BETWEEN LLOYD V WARREN III, AN UNMARRIED MAN, whose address is 54 HENRY ST, NORWICH, NY 13815 (sometimes below will be called "Owner," "Borrower," "I," or "me"); and JPMorgan Chase Bank, N.A., whose address is Home Equity and Consumer Lending Division, 1111 Polaris Parkway, Columbus, OH 43240 (sometimes below will be called "Lender").

OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY. I mortgage, grant and convey to Lender the Property, subject to the terms of this Security Instrument, to have and to hold all of the Property to Lender, and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. Those rights that the law gives to lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if I fail to do any of the following:

(A) Pay all the amounts that I owe Lender as stated in the Credit Agreement;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

DESCRIPTION OF THE PROPERTY. I mortgage, grant and convey to Lender the Property described in (A) through (I) below.

(A) This Property is located in CHENANGO County, State of New York:

The within described premises are or are to be improved by a one or two family residence or dwelling only.

ALL THAT TRACT OR PARCEL OF LAND SITUATE IN THE CITY OF NORWICH, COUNTY OF CHENANGO AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT THE INTERSECTION OF AN EAST LINE OF LANDS NOW OR FORMERLY OWNED BY DAVID A BURDICK AND PAULA BURDICK (BOOK 579, PAGE 462) WITH THE NORTH LINE OF HENRY STREET, SAID POINT BEING 191 FEET, MORE OR LESS, EASTERLY AS MEASURED ALONG THE NORTHERLY LINE OF HENRY STREET FROM THE EAST LINE OF CANASAWACTA STREET; THENCE NORTH 7 DEGREES 53 MINUTES 17 SECONDS EAST ALONG SAID EAST LINE OF BURDICK PREMISES A DISTANCE OF 99 FEET TO A SOUTH LINE OF BURDICK PREMISES; THENCE SOUTH 82 DEGREES 6 MINUTES 43 SECONDS EAST, ALONG SAID SOUTH LINE OF BURDICK PREMISES, A DISTANCE OF 6.00 FEET TO AN EAST LINE OF BURDICK PREMISES; THENCE N 7 DEGREES 55 MINUTES 51 SECONDS EAST ALONG SAID EAST LINE OF BURDICK PREMISES, A DISTANCE OF 56.35 FEET TO THE SOUTH LINE OF PREMISES NOW OR FORMERLY OWNED BY ENG CHIONG T LIM (BOOK 585, PAGE 700); THENCE 79 DEGREES 39 MINUTES 18 SECONDS EAST ALONG SAID SOUTH LINE OF LIM PREMISES, A DISTANCE OF 65.23 FEET TO THE WEST LINE OF PREMISES NOW OR FORMERLY OWNED BY LAKEVIEW SAVINGS AND LOAN ASSOCIATION (BOOK 756, PAGE 814); THENCE 7 DEGREES 53 MINUTES 17 SECONDS WEST ALONG SAID WEST LINE OF THE LAKEVIEW SAVINGS AND LOAN ASSOCIATION PREMISES, A DISTANCE OF 151.10 FEET TO THE NORTH LINE OF HENRY STREET; THENCE NORTH 83 DEGREES 16 MINUTES 49 SECONDS WEST, ALONG SAID NORTH LINE OF HENRY STREET A DISTANCE OF 71.23 FEET TO THE POINT OF BEGINNING. SBL 136.47-2-27.

The Real Property or its address is commonly known as 54 HENRY ST, NORWICH, NY 13815. The Real Property tax identification number is 136.47-2-27.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in

subparagraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the Property;"

(D) All rents and royalties from the Property described in subparagraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future; and

(I) All replacements of or additions to the Property described in subparagraphs (B) through (I) of this section.

**OWNER'S RIGHT TO MORTGAGE THE PROPERTY AND OWNER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY.** I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**THIS MORTGAGE IS GIVEN TO SECURE (A) PAYMENT OF THE SUMS SECURED AND (B) PERFORMANCE OF ALL OF MY OBLIGATIONS UNDER THIS MORTGAGE. I PROMISE AND I AGREE WITH LENDER AS FOLLOWS:**

**OWNER'S PROMISE TO PAY.** I will pay to Lender on time principal and interest due under the Credit Agreement and any prepayment charges due under the Credit Agreement.

**OWNER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS.** I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will do this by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I must promptly pay or satisfy a superior lien unless: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien. I will then pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.** I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. If the Property is or becomes located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I agree to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maxiumum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender. I agree to maintain such insurance for the term of the loan. NOTICE: In no event, however, pursuant to Section 38.9 of the New York Banking Board Regulations, will I be required to provide hazard insurance in excess of the replacement value of the buildings and other improvements on the Property. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgagee clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that is owed to Lender under the Credit Agreement and under this Security Instrument. If any of the proceeds remain after the amount that is owed to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Credit Agreement, that use will not delay the due date or change the amount of any of the monthly payments under the Credit Agreement and under the Paragraph titled "MONTHLY PAYMENTS FOR TAXES AND INSURANCE" above. However, I and Lender may agree in writing to those delays or changes.

If Lender acquires the Property as provided below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

OWNER'S OBLIGATION TO MAINTAIN THE PROPERTY. I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE. If I fail to comply with any provision of this Security Instrument, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on my behalf may, but will not be required to, take any action that Lender thinks to be appropriate. Any amount that Lender spends or incurs in so doing will bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of my repayment. All such expenses, at Lender's option, will (A) be payable on demand, (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due either during the term of any applicable insurance policy or during the remaining term of the Credit Agreement, or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Security Instrument also will secure payment of these amounts. The rights provided for in this paragraph will be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any action taken by Lender under this paragraph will not constitute a cure of any default so as to bar Lender from any remedy that it otherwise would have had under this Security Instrument.

If Lender required mortgage insurance as a condition for my loan, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

POSSESSION AND USE. Until in default, I may remain in possession and control of and operate and manage the Property.

LENDER'S RIGHT TO INSPECT THE PROPERTY. Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before, or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY. A taking of property by any

Loan No: REDACTED

**MORTGAGE**
(Continued)

Page 5

governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Credit Agreement, that use will not delay the due date or change the amount of any of the monthly payments under the Credit Agreement. However, Lender and I may agree in writing to those delays or changes.

**CONTINUATION OF OWNER'S OBLIGATIONS AND OF LENDER'S RIGHTS.**

Owner's Obligations. Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Credit Agreement or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Credit Agreement and under this Security Instrument.

Lender may allow delays or changes for a person who takes over my rights and obligations, even if Lender is not requested to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Credit Agreement or under this Security Instrument, even if Lender is requested to do so.

Lender's Rights. Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right to demand immediate payment in full of the amounts that are owed to Lender under the Credit Agreement or under this Security Instrument.

**OWNER'S OBLIGATIONS AND THOSE OF PERSONS TAKING OVER OWNER'S OBLIGATIONS.** Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Owner, each of us is fully obligated to keep all of Owner's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.

**LOAN CHARGES.** If the Credit Agreement secured by this Security Instrument is subject to a law which sets maximum Credit Agreement charges, and that law is finally interpreted so that the interest or other Credit Agreement charges collected or to be collected in connection with the Credit Agreement exceed permitted limits: (A) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Credit Agreement or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Credit Agreement.

**LEGISLATION AFFECTING LENDER'S RIGHTS.** If a change in applicable law would make any provision of the Credit Agreement or this Security Instrument unenforceable, Lender may require immediate payment in full of all Sums Secured by this Security Instrument as that phrase is defined above. If Lender requires immediate payment in full under this Paragraph, Lender will take the steps and may act as specified below.

---

**NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT.** Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class, certified or registered mail unless applicable law requires use of another method. The notice will be addressed to me at the address shown at the beginning of this Security Instrument. A notice will be given to me at a different address if I give Lender notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to the Lender's address shown at the beginning of this Security Instrument. A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph or of applicable law. Notwithstanding the foregoing, the address for notice for Lender is: Chase, Attn: Home Equity Loan Servicing, P.O. Box 24714, Columbus, OH 43224.

**GOVERNING LAW.** This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of New York except for matters related to: (1) interest and the exportation of interest, which will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and the laws of the State of Ohio; and (2) the validity and enforcement of Lender's security interest in the Property, which will be governed by the laws of the State where the Property is located. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever of the governing state or federal laws that would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

**OWNER'S COPY.** I will be given one conformed copy of the Credit Agreement and of this Security Instrument.

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED.** Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Owner is sold or transferred and Owner is not a natural person. However, Lender will not require immediate payment in full if this is prohibited by federal law as of the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph, Lender will give me a notice which states this requirement. The notice will give me at least thirty (30) days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**DEFAULT.** At Lender's option, I will be in default under this Security Instrument if any of the following happen: (A) I commit fraud or make a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about my income, assets, liabilities, or any other aspects of my financial condition. (B) I do not meet the repayment terms of the Credit Agreement. (C) My action or inaction adversely affects the collateral for the credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, death of all persons liable on the credit line account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.(3) My action or inaction adversely affects the collateral for the credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, death of all persons liable on the credit line account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**LENDER'S RIGHTS UPON DEFAULT.** If I am in default under this Security Instrument, this is what Lender may do, in addition to any other rights or remedies provided by law:

    **Accelerate Payment.** Lender shall have the right at its option without notice to me to require that I pay immediately the entire amount then remaining unpaid under the Credit Agreement and under this Security Instrument, including any prepayment penalty which I would be required to pay.

    **Lender's Rights to Rental Payments and to Take Possession of the Property.** If Lender

requires immediate payment in full, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (1) collect the rental payments, including overdue rental payments, directly from the tenants; (2) enter on and take possession of the Property; (3) manage the Property; and (4) sign, cancel and change leases. If Lender notifies the tenants that Lender has the right to collect rental payment Lender has the right to collect rental payment directly from them under this Paragraph, I agree that the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Security Instrument. All rental payments collected by Lender or by a receiver, other than any rent paid by me, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, permissible fees, and the cost of any necessary bonds.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing my interest in all or any part of the Property.

**My Payment of Rent.** If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining on the Sums Secured after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of my obligations under this Security Instrument, after my failure to do so, that decision by Lender will not affect Lender's right to declare me in default and to exercise Lender's remedies.

**Expenses.** To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

**LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT.** When Lender has been paid all amounts due under the Credit Agreement and under this Security Instrument I elect to terminate the Credit Agreement, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**AGREEMENTS ABOUT NEW YORK LIEN LAW.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of the New York Lien Law.

**IDENTITY OF LENDER.** Lender is JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, with its main offices located in Columbus, Ohio.

**NON-WAIVER.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision.

**SUPPLEMENT TO PERSONAL PROPERTY DEFINITION.** It is the intention of Lender only to take a security interest in and retain a lien on that personal property considered fixtures under the Uniform Commercial Code as adopted in the jurisdiction where this Mortgage is filed of record as same may be amended from time to time or such other statute of such jurisdiction that defines property affixed to real estate and no other personal property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract

| Loan No: REDACTED | MORTGAGE (Continued) | Page 8 |

for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable federal or state law.

**SUPPLEMENT TO OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.** The above referenced paragraph is amended to change the required Federal Flood Insurance amount as follows: If the Property is or becomes located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I/We agree to obtain and maintain Federal Flood Insurance for the maximum amount of my/our credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender. The remainder of the paragraph remains as stated in the above referenced paragraph.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Instrument:

Amendments. What is written in this Security Instrument and in the Related Documents is my entire agreement with Lender concerning the matters covered by this Security Instrument. To be effective, any change or amendment to this Security Instrument must be in writing and must be signed by whoever will be bound or obligated by the change or amendment. Lender and I agree that at any time before the expiration of the draw period specified in the Credit Agreement, upon Lender's discretion, the term of the draw period may be extended or modified.

Merger. There shall be no merger of the interest or estate created by this Security Instrument with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Time is of the Essence. Time is of the essence in the performance of this Security Instrument. This means that all deadlines for performance provided under this Security Instrument must be strictly complied with and that failure to do so will result in a default.

Waiver of Homestead Exemption. I hereby release and waive all rights and benefits of the homestead exemption laws of the State of New York as to all Sums Secured by this Security Instrument.

Waivers and Consents. Lender will not be deemed to have waived any rights under this Security Instrument unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right will operate as a waiver of such right or any other right. A waiver by any party of a provision of this Security Instrument will not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and me, will constitute a waiver of any of Lender's rights or any of my obligations as to any future transactions. Whenever consent by Lender is required in this Security Instrument, the granting of such consent by Lender in any instance will not constitute continuing consent to later instances where such consent is required.

I ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS SECURITY INSTRUMENT, AND I AGREE TO ITS TERMS.

OWNER:

X _[signature]_
LLOYD V WARREN III,
Individually

| Loan No: REDACTED | MORTGAGE (Continued) | Page 9 |

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __New York__ )
                                                  ) SS
COUNTY OF __Chenango__ )

On the __29th__ day of __October__ in the year 20__07__ before me, the undersigned, a Notary Public in and for said State, personally appeared LLOYD V WARREN III, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

By __Terry Ann Smith__
     Notary Public

My commission expires _____

TERRY ANN SMITH
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN CHENANGO COUNTY
REGISTRATION #4873073
MY COMM. EXPIRES 03/20/2011